UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

FARA HERNANDEZ,    Case No. 1:18-cv-22320-DPG

    Plaintiff,

vs.

GEOVERA SPECIALTY
INSURANCE COMPANY,

    Defendant.

_____/

## PLAINTIFF FARA HERNANDEZ'S RESPONSE IN OPPOSITION TO DEFENDANT GEOVERA SPECIALTY INSURANCE COMPANY'S RENEWED MOTION FOR SUMMARY JUDGEMENT [DE 26] AND MEMORANDUM IN SUPPORT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Southern District of Florida Local Rules, as well as, the discretionary and inherent powers of this Honorable Court, **Plaintiff FARA HERNANDEZ (hereinafter "Plaintiff" or "Plaintiff Hernandez"),** responds in opposition to **Defendant GEOVERA SPECIALTY INSURANCE COMPANY (hereinafter "Defendant" or Defendant Geovera")** Renewed Motion for Summary Judgement [DE 26] ("Motion") (hereinafter "Response") against Plaintiff, and claims that there are genuine issues of material fact which preclude entry of same, and in support thereof, states as follows**:**

### SUMMARY OF THE ARGUMENTS

1. By this Response, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion [DE 26] as there are genuine issues of material fact which preclude the entry of same.

2. Defendant's basis for entitlement to summary judgment is grounded on the assertion that Plaintiff has failed to establish that Defendant breached the Insurance Contract at issue. Specifically, Defendant is claiming it is entitled to summary judgment based on the "Peril created opening" argument.

3. In essence, Defendant asserts that the pleadings, deposition transcripts and responses to discovery on file are void of genuine issues of material facts that Hurricane Irma winds created an opening in which water entered and caused damage to the interior of Plaintiff's home. (See para. 2-5 of Motion [DE 26]). Instead, Plaintiff claims that the damage to the interior

of Plaintiff's home is a result of "wear and tear" or "pre-existing damage" to her roof. (See para. 4 and 7 of the Answer and Affirmative Defenses [DE 3]).

4. Defendant's position is flawed on its face as the Motion [DE 26], itself, creates issues of facts that viewed in the light most favorable to Plaintiff, should perpetuate a denial. See Fed. R. Civ. P. 56(c); See Also, Stewart v. Happy Herman's Cheshire Bridge, Inc., 117 F.3d 1278, 1285 (11th Cir.1997). Furthermore, Defendant's Motion [DE 26] should be denied for the reasons outlined herein.

5. First and generally speaking, Defendant's Motion for Summary Judgment confuses the burden of the respective parties. Specifically, and considering that Defendant is the party moving for summary judgment, Defendant has the burden of conclusively demonstrating that no genuine issues of material fact exist and that it is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The initial burden is not on Plaintiff to establish that there was a peril-created opening in the roof of the subject property. (See paras.: 2-5 of [DE 26]).

6. Second, the record contains genuine issues of material facts related to whether Defendant breached the Insurance contract at Issue by not accepting coverage of the damage to the roof. On February 26, 2018, Plaintiff, through her Public Adjuster Armando Barba ("Mr. Barba"), submitted a Sworn Proof of Loss that confirms damage to the Property consisting of $129,833.89. (See Exhibit C-3). Moreover, the General Contractor that Plaintiff retained to inspect and value the repair cost to her property, Mr. Jeff Prakash Baboolal from Platinum General Contracting and Land Development, LLC, confirmed that the damage to the property as a result of Hurricane Irma totaled $118,550.00. (See Exhibit "H" and "H-1"). In addition, Mr. Barba and Mr. Baboolal's affidavits, both individual's asserts that Plaintiff's roof needed to be replaced because the tiles that were damaged as a result of Hurricane Irma could not be replaced with "like kind and quality." (See Exhibit "C" and "H").

7. Relatedly, whether the facts of a matter fall within the scope of coverage of an insurance contract is a question for the trier of fact. *See Marr Investments, Inc. v. Greco*, 621 So.2d 447 (Fla. 4th DCA 1993).

8. Therefore, a determination as to whether the facts of a particular matter trigger coverage is a question for a jury. Moreover, the sworn proof of loss, in and of itself, creates an

issue of fact that Defendant underpaid the damage to Plaintiff's Residence and, as such, breached the Insurance contract.

9.  Third, there are genuine issues of material facts as to whether the damage to the interior of Plaintiff's Residence was caused by water that seeped in through openings caused by Hurricane Irma winds. Specifically, Defendant's Filed Adjuster, Ricky Pericles, Defendant's Engineer, Steven Smith, as well as, Plaintiff's Expert, Constantine Bortes, and Plaintiff's Public Adjuster, Armando Barba, all testified that based on their respective inspections of Plaintiff's property, the damage to the interior of Plaintiff's residence *could* have been caused by Hurricane Irma. (See Exhibits "A," "C," "D," and "E"). Finally, Plaintiff testified in her affidavit that the water damage to the interior of her home occurred only after Hurricane Irma. (See Exhibit "G").

10. Relatedly, in ruling on a motion for summary judgment, the Court may neither adjudge the credibility of the witnesses nor weigh the evidence. *Gov't Employees Ins. Co. v. DG Esthetic & Therapy Ctr., Inc.*, 18-20921-CIV, 2019 WL 1992930, at *7 (S.D. Fla. Apr. 19, 2019) (holding that summary judgment was denied as "[i]t is the responsibility of the ultimate finder of fact to weigh the evidence and make the appropriate credibility determinations"). Specifically and pursuant to the ruling in *Garcia, Heery Int'l* and *Byrd*, Defendant herein cannot seek to exclude Mr. Borte's testimony in summary judgment proceedings. Indeed, any issues of credibility of Mr. Bortes or the weight of his testimony/evidence are not appropriate in a summary judgment determination. *Id.*; *See, Heery Int'l*, 646 So.2d at 822; *See also, Byrd*, 948 So.2d at 923.

11. Therefore, the deposition testimony, in and of themselves, create issues of facts that the water damage to the interior of Plaintiff's residence *may* have been caused by Hurricane Irma.

**BACKGROUND AND STATEMENT OF MATERIAL FACTS**

12. This is an action for breach of an insurance contract between Plaintiff and the Defendant. The crux of this matter arises out of Plaintiff's allegations that Defendant breached the homeowner's insurance policy in full force and effect for the property located at 2027 SW 64th Avenue, Miami, Florida 33155 ("Plaintiff's Property"). Specifically, Defendant failed to fully compensate Plaintiff for damages sustained to her residence on September 10, 2017 as a result of Hurricane Irma. (See para. 5-6 of Plaintiff's Complaint [DE 1-2]).

13. The Complaint was served upon Defendant on May 14, 2018 and on June 11, 2018, Defendant timely filed its Notice of Removal and Supporting Memorandum of Law. [DE 1].

14. From May 2018 to the present, the parties have engaged in discovery in accordance with the Court's Scheduling Order. [DE 20]

15. On March 4, 2019, Defendant filed its initial Motion for Summary Judgment [DE 13] ("First Motion for Summary Judgment").

16. In its First Motion for Summary Judgment, Defendant claimed, in part, that Plaintiff could not establish breach of contract or damages because it did not disclose any expert's pursuant to Federal Rules of Civil Procedure 26(a)(2). (See para. 6-7 of [DE 13]).

17. On June 3, 2019, Defendant filed its Renewed Motion for Summary Judgment [DE 26]. ("Second Motion for Summary Judgment").

18. In its Second Motion for Summary Judgment, Defendant claimed, in part, that Plaintiff could not establish breach of contract or damages because, "[P]laintiff cannot meet her burden to prove a covered loss in accordance with the express terms of the insurance contact." (See para. 6-7 of [DE 26]).

19. As set forth in greater detail below, Defendant's First and Second Motions for Summary Judgment (collectively, "Motion for Summary Judgment") should be denied because Defendant failed to meet its considerable burden of proof, fails to establish an absence of a genuine issue of material fact or that Defendant is entitled to a judgment as a matter of law.

## MEMORANDUM OF LAW IN SUPPORT

## SUMMARY JUDGEMENT STANDARD

Under Rule 56(c), the summary judgment movant must demonstrate that "there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247–48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247–48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). *Furcron v. Mail Ctrs. Plus, LLC*, 843 F.3d 1295, 1304 (11th Cir. 2016). *Thomas v. Nw. Mut. Life Ins. Co.*, 2:18-CV-14166, 2019 WL 2298678, at *4 (S.D. Fla. May 30, 2019).

The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

More importantly, in ruling on a motion for summary judgment, the court may neither adjudge the credibility of the witnesses nor weigh the evidence. Indeed, the Southern District of Florida has held that, "[i]t is the responsibility of the ultimate finder of fact to weigh the evidence and make the appropriate credibility determinations." *Gov't Employees Ins. Co. v. DG Esthetic & Therapy Ctr., Inc.*, 18-20921-CIV, 2019 WL 1992930, at *7 (S.D. Fla. Apr. 19, 2019); *Harris v. Shelby Cty. Bd. of Educ.* 99 F.3d 1078, 1084 (11th Cir. 1996); *Walls v. Button Gwinnett Bancorp, Inc.*, 1 F.3d 1198, 1200 (11th Cir.1993); *see also Hernandez v. United Auto. Ins. Co., 730 So.2d 344, 345 (Fla. 3d DCA1999)* ("In ruling on a motion for summary judgment, it is well-established that the court may neither adjudge the credibility of the witnesses nor weigh the evidence."); *Pita v. State St. Bank & Tr. Co.*, 666 So.2d 268, 268 (Fla. 3d DCA 1996) ("On a motion for summary judgment, it is settled that a trial court is not permitted to weigh material conflicting evidence or pass upon the credibility of the witnesses").

## **LEGAL ARGUMENTS**

### I. AS A PRELIMINARY MATTER, DEFENDANT MISREPRESENTS PLAINTIFF'S BURDEN IN THIS CASE AS REQUIRING PROOF THAT THERE WAS A WIND-CREATED OPENING

In its Motion for Summary Judgment, Defendant argues that the initial burden of proof is on the Plaintiff to establish that there was a peril-created opening in the roof of the subject property. (See paras.: 2-5 of [DE 26]). However, considering that Defendant is the party moving for summary judgment, this contention could not be more incorrect.

Defendant has the burden of conclusively demonstrating that no genuine issues of material fact exist and that it is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Holl v. Talcott,* 191 So. 2d 40, 43 (Fla. 1966); *see also Gonzalez v.*

*Chase Home Fin. L.L.C.,* 37 So. 3d 955, 956-57 (Fla. 3d DCA 2010) ("The burden is on the moving party to demonstrate that the other party unquestionably cannot prevail."). Until Defendant satisfies this burden, Plaintiff is under no obligation to show that issues do remain to be tried ..." *Holl,* 191 So. 2d at 40 (Fla. 1966).

A per its own admission, Defendant issued Plaintiff a homeowner's insurance policy (No.: GC60032994), insuring Plaintiff's residence at 2027 SW 64th Avenue, Miami, Florida 33155, which was in full force and effect on or about September 11, 2017 (See pg., para. 1 of [DE 26]). Consequently, the Plaintiff's initial burden is only to prove that her home sustained damage as the result of a loss. *See Hudson v. Prudential Prop, & Cas. Ins. Co.,* 450 So. 2d 565, 568 (Fla. 2d DCA 1984) ("[T]he general rule of evidence is that a plaintiff seeking to recover under an "all risks" policy has the burden of proving that, while the policy was in force, a loss occurred to the insured's property.") (internal citation omitted). Once satisfied, the burden shifts to the Defendant's to then prove that the Plaintiff's loss is excluded from coverage under an applicable policy provision. *See Castillo v. State Farm Fla. Ins. Co.,* 971 So. 2d 820, 824 (Fla. 3d DCA 2007) ("Once the insured establishes a loss apparently within the terms of an all-risk policy, the burden shifts to the insurer to prove that the loss arose from a cause which is excepted." (internal citation omitted)); *Herrera v. C.A. Seguros Catatumbo,* 844 So. 2d 664, 66 (Fla. 3d DCA 2003); *U.S. Concrete Pipe Co. v. Bould,* 437 So. 2d 1061, 1065 (Fla. 1983). When an insurer relies on an exclusion to deny coverage, it has the burden of demonstrating that the allegations in the complaint are cast *solely and entirely* within the policy exclusions and are subject to no other reasonable interpretation. Further, exclusionary clauses are generally disfavored, so courts construe any ambiguity in exclusionary language strictly against the insurer. *Id.* at 1359 (citing *Westmoreland v. Lumbermens Mut. Cas. Co.,* 704 So. 2d 176, 179 (Fla. 4th DCA 1997)).

In the case at hand, there is no dispute that a loss to covered property occurred at the Plaintiffs' property while the policy was in full force and effect. (See pgs. 2-3 para. 1-3 of the Statement of Undisputed Facts of [DE 26]). Defendant acknowledges that there is damage to the roof of the subject property due to a reported date of loss of September 11, 2017. (See pgs. 3 para. 3 of the Statement of Undisputed Facts of [DE 26]). Specifically, Defendant admits that,

> "B]ased upon Mr. Pericles' (Defendant's Field Adjuster) inspection, GeoVera determined that the amount of Plaintiff's **covered** loss was $3,095.82. The covered items consisted of damaged patio paneling, a damaged wrought iron fence and three (3) broken roof tiles."

(emphasis added). (See pgs. 3 para. 3 of the Statement of Undisputed Facts of [DE 26]).

Therefore, for Defendant to now prevail on summary judgment, it has the exclusive burden of proving that Plaintiff's loss falls squarely and exclusively within the exclusions enumerated under the policy such that it is entitled to judgment as a matter of law.

Defendant presents unsupported and conclusory allegations that it is undisputed that the claimed damages to the roof and interior of the insured property: were not caused by wind; and/or were preexisting damages or were the result of "deficient installation." Notwithstanding its efforts, there are material issues of fact which preclude summary judgment on each of Defendant's relied upon exclusions. (See Section II B, below).

As such, Plaintiffs state there are genuine issues of material fact and those matters should be determined at trial by the trier of fact

## II. ISSUES OF FACTS EXISTS AS TO WHETHER DEFENDANT BREACHED THE INSURANCE CONTRACT
### A. PLAINTIFF'S DAMAGES EXCEEDED PLAINTIFF'S DEDUCTIBLE.

In its Motion for Summary Judgment [DE 26], Defendant relies on an Affidavit of the Corporate Representative, Joseph Belton, to attempt to establish that the covered damage did not exceed the deductible. Specifically, Defendant alleges that, as the covered damage/loss, totaling $3,095.82, was below Plaintiff's $4,580.00 deductible, no payment was made to Plaintiff by GeoVera as set forth in GeoVera's letter to Plaintiff dated November 14, 2017. (See pgs. 3 para. 3 of the Statement of Undisputed Facts of [DE 26]).

However, the record is replete with issues of material facts as to this point.

### 1. Defendant's Field Adjuster, Ricky Pericles

Specifically, Defendant's Field Adjuster, Mr. Ricky Pericles, testified in his deposition that his initial report for inspection of Plaintiff's property exceeded the deductible and included damage to the roof and the inside of the residence. In his deposition, Mr. Pericles testified that he created his first report of his inspection on October 15, 2017 and that the total damages of the net claim amounted to $7,444.44. (See pg. 77:20-25; 78:1-2 attached hereto as **Exhibit "A"**). Thereafter, Mr. Pericles revised the report to reduce the net claim amount from $7,444.44 to zero. (See pg. 79:1-9; of Exhibit "A"). When questioned, Mr. Pericles testified that he, "[W]e have revised our estimate based on the Client's (GeoVera) request." (See pg. 79:10-15; 80:1-25; of Exhibit "A"). Copies of Mr. Pericles's First and Second Reports are attached hereto as composite **Exhibit "B."**

Mr. Pericles's testimony creates an issue of fact as to the net amount of Plaintiff's claim and establishes that said cost exceeded Plaintiff's $4,850.00 deductible. Therefore, summary judgment on this issue is improper.

2. Plaintiff's Public Adjuster, Armando Barba

Plaintiff in this matter retained the services of Armando Barba to assist in her claim against Defendant. According to Mr. Barba's Affidavit, Barba Public Adjusters (collectively, "Barba") inspected Plaintiff's property and created a repair estimate totaling $129,833.89. (A copy of Barba's estimate is attached as Exhibit 1 to **Exhibit "C"**). According to Barba's estimate, a third-party roofing corporation, S&J Roofing and Construction, was retained to create a roof estimate that totaled $27,100.00. (See Exhibit 2 of Exhibit "C"). Based on the loss alleged and the estimate amount, on or about February 26, 2018, Barba served a sworn proof of loss on Defendant prior to suit being filed that the total net amount of Plaintiff's claim totaled $129,833.89. (See Exhibit 3 of Exhibit "C"). (See para. 10 & 14 of Complaint [DE 1-2]).

The carrier blatantly ignored Mrs. Hernandez, failing to put Mrs. Hernandez in her pre-loss condition. Thereby, breaking the insurance contract.

Barba's testimony creates an issue of fact as to the net amount of Plaintiff's claim and establishes that said cost exceeded Plaintiff's $4,850.00 deductible. Therefore, summary judgment on this issue is improper.

3. Plaintiff's Expert, Jeff Prakash Baboolal, G.C.

Plaintiff in this matter retained Jeff Prakash Baboolal, G.C. ("Mr. Baboolal") who works for Platinum General Contracting and Land Development, LLC (collectively, "Platinum"). Platinum was retained to provide a repair/replace estimate for the damage caused to her property by Hurricane Irma.

According to Mr. Baboolal's Affidavit, Platinum inspected Plaintiff's property and created a repair estimate totaling $118,550.00. (A copy of Platinum's estimate is attached as Exhibit 1 to **Exhibit "H"**). Moreover, Platinum confirmed that, "[T]he repair estimate of damages detailing the damages sustained at the subject property following Hurricane Irma amounted to $118,550.00 after the applicable $4,580.00 deductible." (See para. 9 of Exhibit "H" and "H-1").

Platinum's testimony creates an issue of fact as to the net amount of Plaintiff's claim and establishes that said cost exceeded Plaintiff's $4,850.00 deductible. Therefore, summary judgment on this issue is improper.

## B. THE DAMAGES TO THE PROPERTY WERE CAUSED BY HURRICANE IRMA AND ARE NOT EXCLUDED

In its Motion for Summary Judgment [DE 26], Defendant relies on an Affidavit of the Mr. Belton and the Haag Engineering Report created by Mr. Steven Smith, to attempt to establish that there is no evidence that the water damage to the interior was a result of water that seeped through an opening/crack created by Hurricane Irma winds. (See para. 3-4 of [DE 26]).

In addition, the testimony included the evidence establish that, at best, there is an issue of fact as to the application of the exclusion related to water limitations. Specifically, Defendant alleges that the subject insurance contact provides coverage for interior water damage only if the interior water damage results from wine or hail that causes an opening through which the water enters the building:

> "**SECTION I-EXCLUSIONS**
> Paragraph A.3 is replaced by the following:
> 4. "Water Damage"
> However, "water damage" resulting from covered loss caused by:
> c. *Windstorm* or hail *if the direct force of wind* or hail *first damages the building causing an opening in the roof* or a wall *and water enters through this opening*;
> is covered, unless such peril is otherwise excluded."

(emphasis added) (See pg. 6-7, [DE 26]). ("Policy Exclusion").

In other words, Defendant's Motion claims that there is no genuine issue of material fact that wind caused an opening in Plaintiff's roof, that water entered through said opening and that said water caused damage to the interior of Plaintiff's Property.

Such allegations are not only incorrect but blatantly false on the face of the record, as well as, the deposition of Defendant's own expert testimony.

1. <u>Defendant's Field Adjuster, Ricky Pericles</u>

In his deposition, Mr. Pericles could not confirm whether the three (3) cracks noted were caused either by Hurricane Irma or existed before Hurricane Irma. (See pg. 46:1-17; of Exhibit "A").

Mr. Pericles testified that, in his opinion, water stains to the ceiling of the following rooms were either *caused* or *may* have been by water from Hurricane Irma:

- Water Stains to the ceiling of the storage room (See pg. 66:16-24; of Exhibit "A");
- Water Stains to the ceiling of the front bedroom (See pg. 67:1-14; of Exhibit "A");
- Water Stains to the ceiling of the front bedroom closet (See pg. 67:15-25; 68:1-11; of Exhibit "A");

- Water Stains to the ceiling of the hallway (See pg. 68:1-25; of Exhibit "A");
- Water Stains to the ceiling of the pink room (See pg. 69:158-25; 70:1-15; of Exhibit "A");
- Water Stains to the ceiling of bedroom three (See pg. 70:1-16; of Exhibit "A");
- Hairline crack to the ceiling of the Living Room (See pg. 72:8-14; of Exhibit "A");
- Water Stains to the ceiling of the family room (See pg. 72:16-25; 73:1-3 of Exhibit "A");
- Water Stains to the tile flooring (See pg. 73:4-15 of Exhibit "A");
- Water Stains to the guest living room popcorn ceiling and quarter round (See pg. 73:17-25; 74:1-14 of Exhibit "A");
- Water Stains to the guest kitchen ceiling (See pg. 74:16-25; 75:1-25 of Exhibit "A");
- Water Stains to the guest bedroom and guest bathroom ceiling (See pg. 76:1-25; 77:1-2 of Exhibit "A");

When asked about water stains to the ceiling of the interior of Plaintiff's home, Mr. Pericles stated that said stains *could* have been caused by water that seeped into Plaintiff's residence from Hurricane Irma. Specifically, Mr. Pericles testified as follows:

> Q: So is it safe to say that the damages that we're discussing could have been caused by water that seeped in the house from the hurricane?
> Ms. Brimmer: Objection to the form. You may answer.
> The Witness Yes.
> Q: Is that the same for all the remaining sections? The Bedroom three it talks about a ceiling stain. Do you see that?
> A: Yes.

(See pg. 70:16-25; of Exhibit "A");

In addition, Mr. Pericles stated that, based on his inspection of Plaintiff's home, the water damage to the interior of Plaintiff's home was based on water intrusion that's coming in from the flashing in most of the areas of the home. Specifically, Mr. Pericles testified as follows:

> Q. If you could make a coverage determination on this case, what would it be?
> MS. BRIMMER: Object to the form.
> The WITNESS: I honestly don't recall the details of this case, but as I stated, I believe its water intrusion that coming in from the flashing in most of the areas of the home.

(See pg. 83:8-14; of Exhibit "A").

Mr. Pericles's testimony creates an issue of fact as to the water damage to the interior was a result of water that seeped through an opening/crack created by Hurricane Irma winds. Therefore, summary judgment on this issue is improper.

2. <u>Plaintiff's Public Adjuster, Armando Barba</u>

According to his affidavit, Mr. Barba testified that, based on his first hand inspection of the property, he, "[O]bserved damages to the subject property, specifically to the roof and damages to the interior of the property caused by water that entered the interior of the property through the openings in the roof caused by hurricane force winds during Hurricane Irma. (See para. 7, Exhibit "C"). Specifically, Mr. Barba went on to state that the water damage to the interior of Mrs. Hernandez's home was caused by "[H]urricane force winds shifting and/or cracking of the roof tiles, leading to a break in the protective membrane (liner), resulting in openings that allowed water to enter the structure…" (See para. 10, Exhibit "C").

Therefore, Mr. Barba's testimony creates an issue of fact as to the water damage to the interior was a result of water that seeped through an opening/crack created by Hurricane Irma winds. Therefore, summary judgment on this issue is improper.

3. <u>Defendant's Expert, Steven Smith, PE</u>

In his deposition, Defendant's Expert Engineer, Steven Smith ("Mr. Smith"), testified that Plaintiff's roof suffered cracks during Hurricane Irma. Generally speaking, Mr. Smith testified that, "[I]f wind caused debris to hit a tile and cracked the tile, then that would be considered "wind-caused damage." (See pg. 28:17-25; 29:1-15 of Mr. Smith's deposition transcript attached hereto as **Exhibit "D"**). Relatedly, Mr. Smith testified as follows:

> Q: Sure. If a homeowner suffered water leaking into the interior of her home that came in through a crack of a tile caused by a debris that impacted the home during the windstorm of a hurricane, would that be considered wind caused damage?
> A: The subsequent water damage would be attributed to the wind damaged tile

(See pg. 29:9-15; of Exhibit "D").

Mr. Smith went on to testify that upon his inspection of the property, he "[D]etected three (3) tiles of the roof that exhibits relatively new cracks that *could* have resulted from impact during passage of Hurricane Irma." (See pg. 45:8-15; of Exhibit "D"). Specifically, Mr. Smith testified:

> Q: And – and – and just to clarify because you refer to – to multiple tiles that were cracked, some you referred to as old cracks, some you referred to as new cracks. I'm simply asking about the cracks that are new. So Photographs 30 to 34 depict new cracks?
> A: That is –they all depict the same one tile and 34 shows why I determined it was a new crack.

> Q: And by new, are you defining new as caused during Hurricane Irma?
> A: <u>Possibly</u>.
>
> ---
>
> Q: Okay. I understand. So how many – how many tiles during – were – may possibly have been cracked during Hurricane Irma, to the best of your knowledge and inspection?
> A: Three.
> Q: ***And if -- if these cracks were possibly damaged during Hurricane Irma, is it also possible that water may have seeped through those cracks during the hurricane?***
> *A:* ***Water may have seeped through – into the crack and through the tile, yes.***
> Q: <u>***And is it possible that the water may have seeped into the house and caused water damage?***</u>
> A: <u>***Yes.***</u>

(emphasis added) (See pg. 46:1-25; 47:1-4; of Exhibit "D").

In addition, Mr. Smith testified that he reviewed an uplift inspection report from South Florida SG&E Engineering (See pg. 6:1-10; of Exhibit "D"). Mr. Smith went on to testify that although he inspected the property, he did not perform an uplift test himself (See pg. 33:5-6; of Exhibit "D").

In essence, Mr. Smith's testimony about water seeping through the "new" cracks is summed up as follows:

> Q: ***Is it your opinion that there was heavy rainfall during Hurricane Irma?***
> A: ***Yes.***
> Q: ***And is it your opinion that water may have leaked through openings of cracked tiles during Hurricane Irma?***
> A: ***Yes, yes.***
>     MS. BRIMMER:   Object to the form.
> Q: And that's regardless of whether those cracked tiles were old cracked tiles or new cracked tiles. Is that accurate?
> A: Water can seep through cracks, yes.

(emphasis added). (See pg. 60:11-23; of Exhibit "D").

Moreover, when questioned on the condition of Plaintiff's tiled roof, Mr. Smith testified that it is his opinion that the tiled roof was, "[I]n *fair* condition prior to Hurricane Irma." (See pg. 59:22-24; of Exhibit "D"). This admission, in and of itself, creates an issue of fact as to the condition of the roof prior to Hurricane Irma. Specifically, Mr. Smith's testimony contradicts Defendant's claims that the loss was allegedly excluded from the policy because it was a result of "wear and tear and deterioration." (See pg. pg. 4, para. 7 of [DE 26]).

Therefore, Mr. Smith's testimony contradicts and creates an issue of fact as to the condition of the tiled roof prior to the Hurricane. In addition, Mr. Smith's testimony also creates an issue of fact as to the water damage to the interior was a result of water that seeped through an opening/crack created by Hurricane Irma winds. Therefore, summary judgment on this issue is improper.

4. Plaintiff's Expert, Jeff Prakash Baboolal, GC

In his affidavit, Mr. Baboolal testified that, based on the damages to the subject property and his extensive personal experience as a general contractor, "[I]t is my opinion that the damages to the exterior and the water damage to the ceiling of the interior of the subject property were directly caused by Hurricane Irma.." (See para. 6 of Exhibit "H"). Moreover, Mr. Baboolal went on to testify that based on his expert opinion, "[O]penings to the roof caused by Hurricane Irma winds allowed water to enter Plaintiff's home, thereby causing water damage to the interior of Plaintiff's home." (See para. 8 of Exhibit "H").

Therefore, Mr. Baboolal's testimony creates an issue of fact as to the water damage to the interior was a result of water that seeped through an opening/crack created by Hurricane Irma winds. Therefore, summary judgment on this issue is improper.

5. Plaintiff's Expert, Constantine Bortes, PE

In his deposition, Plaintiff's Expert Engineer, Constantine Bortes ("Mr. Bortes"), testified that Hurricane Irma caused Plaintiff's roof to become weak resulting in cracks or openings that allowed water to penetrate the roof and enter the home causing stains and damage. (See pg. 62:14-25; 63:1-13 of Mr. Bortes' deposition transcript attached hereto as **Exhibit "E"**).

In addition, Mr. Bortes testified that he reviewed the uplift test report performed by South Florida S.G&E Engineering (See pg. 40:1-11 of Exhibit "E") (A copy of the Uplift Report is attached hereto as **Exhibit "F"**). In addition, Mr. Bortes performed an upleft tests himself and testified as follows:

> Q. Looking at the first page of your report, sir, the last the paragraph says, uplift test TAS number 106 for the roof-covered tiles was performed showing a failure. Are you referring to testing that you did?
> A. Yes.
> Q. Or are you referring to the testing done by 16 Florida S.G & E?
> A. No. It is my opinion.
> Q. How many tiles did you test?

> A. According to the Florida Building Code, if it fails more than 10 percent, you are done. So you have to estimate them by the way you look at them. Any one that you touch that failed, fail, fail. I don't want to do more damage than is already there.
> Q. Basically, you estimate the sizes of the tile roof to determine how many you are going to test?
> A. As an engineer, when you see the condition of the roof you can determine it. I mean, if you take a bite of an apple and it's rotten inside, you don't have to turn around and bite the other side of the apple. You know it is bad.

(See pg. 49:9-23; 50:1-5 of Exhibit "E").

In addition, Mr. Bortes testified that, based on his opinion, winds from Hurricane Irma caused damage to the roofing system allowing water to penetrate through and cause damage to Mrs. Hernandez's home. Specifically, Mr. Bortes testified as follows:

> Q: So the basis for your opinion that the weathering conditions during Hurricane Irma may have aggravated the roof condition of the Hernandez roof are based upon what, sir?
> A: I am trying to explain in simple language. It is like the last drop that overfilled the glass.
> Q: You don't have to use simple language to me. I understand the technical language. Tell me the technical language.
> A: It is like this happened beyond this statement. There were no leaks in the house. During this weathering condition of hurricane, the tiles may shifted, underlining broken. It takes not much for the water to penetrate though it and the water is the most enemy of construction. It not takes too much to crack the underlament [sic] on top of the deck, protecting that water from penetrating the roof. When you overstress you overstress. It is simple. When the weather conditions become extreme, those may cause the weak points and there was a few leaks in the house, which I tried to include in the picture from before, even though all over the house few places which was the weakest point, in the overstressed positions, become weaker and broke. *That's why the water going into the roof caused all those stains and all this damage*.

(See pg. 62:914-25; 63:1-13 of Exhibit "E")

Therefore, Mr. Bortes's testimony creates an issue of fact as to the water damage to the interior was a result of water that seeped through an opening/cracked tile created by Hurricane Irma winds. Moreover and based on Mr. Bortes's testimony, there are clear issues of fact as to whether "water damage" as defined by the insurance contract and exclusion outlined above resulted from water that that entered through an opening in the roof.

As previously noted, Defendant itself concedes that the roof of the subject property had suffered damage. Notably absent from the Policy Exclusion above is any specific definition of

"opening." The Policy simply refers to a ""opening in the roof," which is ambiguous at best.

The construction of ambiguities in an insurance policy is a question of law. *State Farm Fire & Cas. Co. v. Metro. Dade County,* 639 So. 2d 63, 65 (Fla. 3d DCA 1994) (citing *Jones v. Utica Mut. Ins. Co.,* 463 So.2d 1153, 1157 (Fla. 1985)). "[P]olicy provisions which tend to limit liability must be construed liberally in favor of the insured against the insurer," however, "where the language of a policy is clear and unambiguous on its face, the policy must be given full effect." *Id.* (citations omitted). Further, "[i]n the absence of ambiguity ... it is the function of the court to give full effect to the insurance contract as written." *Id.* (citing *United States Fire Ins. Co. v. Morejon,* 338 So. 2d 223, 225 (Fla. 3d DCA 1976), cert. denied, 345 So. 2d 426 (Fla. 1977); *Rigel v. Nat'l Cas. Co.,* 76 So. 2d 285 (Fla. 1954)). Where a policy is ambiguous, the court will construe the policy in favor of coverage and against the insurer who drafted the policy. *Northland Cas. Co.,* 160 F.Supp.2d at 1358.

In the case at hand, Defendant's Expert and Field Adjuster both testified, within a reasonable degree of certainty, that "winds from Hurricane Irma caused damage to Plaintiff's roof in the form of cracking three (3) tiles," that "water may have seeped into the home through those tiles" and that "said water may have caused damage to the interior of Plaintiff's home." (See Exhibits "A" and "D").

In light of the competing testimony, there is a factual dispute as to what was the cause of loss was. Beyond its self-serving interpretation of the Policy Exclusion, Defendant has failed to provide the Court with any competent evidence to consider entitling it to judgment as a matter of law on this exclusion. At a minimum, there are a myriad of material issues of fact which preclude summary judgment.

Defendant is the party moving for summary judgment. As such, Defendant must conclusively prove a negative, and said proof must be such as to overcome all reasonable inferences which may be drawn in favor of the opposing party. *Hall v, Talcott,* 191 So. 2d 480 (Fla. 1966) ("it must first be determined that the party moving for summary judgment has successfully met his burden of proving a negative"). Defendant does not satisfy its burden entitling it to judgment as a matter of law by simply submitting conclusory statements without any basis or support. Indeed, whether a covered peril within the terms of the subject Policy created an opening in the roof absolutely remains an issue of fact reserved for a jury.

The Third District Court of Appeal recently addressed the exact issue before the Court in

*Garcia v. First Cmty. Ins. Co.*, 241 So.3d 254 (Fla. 3d DCA 2018). In Garcia, the insured made a claim for property damage allegedly caused by a roof leak. The insurer adjusted the claim and subsequently denied coverage for the roof leak. The insured thereafter filed suit, alleging breach of contract, and demanding monetary damages, interest, attorneys' fees, and costs. *Id.* The insurer filed a motion for summary judgment, arguing that the claimed damages were not subject to coverage under the policy. *Id.* The insurer relied on the conclusions of its forensic engineer that the "cause of the water intrusion through the roof was a result of a combination of age-related deterioration, tree branch abrasions, and construction defects and that the "face nails observed on. the shingles created a direct path for water to penetrate the structure, which is considered a construction defect." *Id.* (internal citations omitted). In opposition to the insurer's motion for summary judgment, the insured filed an affidavit of a professional engineer whom attested that "there is insufficient evidence to rule out that the damages were caused by hail impact or wind uplift damage caused by a one-time occurrence," and that "there is no evidence to support any contention that the damages reported by the insured in this claim are age-related or long term in nature." *Id.* (internal citations omitted). The trial court granted the insurer's motion for summary judgment and the insured appealed. On appeal, the Third DCA reversed the trial court's ruling, holding that summary judgment could not be granted in favor of the insurer "where the conflicting reports of the parties' experts established that there was a genuine issue of material fact." *Id.*

As it relates to the credibility of plaintiff's expert as the basis for granting summary judgment in favor of the moving party, the *Garcia* court denied such a proposition. The *Garcia* Court held that although plaintiff's expert inspected the property three (3) years after the loss and defendant's expert inspected the property less than three (3) months after the loss, the difference in timing could not be the basis to reject an expert's opinion. *Garcia*, 241 So.3d at 258. The Court went on to hold that the,

> "[C]onsideration of timing…however, goes to the credibility of [plaintiff's expert's] opinion regarding the cause of loss. It is well-established that issues of credibility and weight of evidence are not appropriate in a summary judgment determination. *See Byrd v. BT Foods, Inc.*, 948 So.2d 921, 23 (Fla. 4th DCA 2007) ("where credibility issues impact the determination of material facts, summary judgment is not appropriate."). Indeed, a "trial court may not determine factual issues nor consider either the weight of the conflicting evidence or the credibility of witnesses in determination whether a genuine issue of material fact exist in a summary judgment proceeding." *Juno-Indus., Inc. v. Heery Int'l*, 646 So.2d 818, 22 (Fla. 5th DCA 1994).

Id. at 258.

The facts in *Garcia* are indistinguishable to the facts of the present case. Just as is *Garcia,* here the "conclusions reached by the opposing engineers are clearly at odds." *Id.* Consequently, "because a genuine issue of material fact exists as to the cause of loss to the property," Defendant's motion for summary judgment should be denied. *Id.* Moreover, the ruling in *Garcia* is more prevalent to the case before this Honorable Court as the defendant in *Garcia* fully denied the claim. *Id.* In the case before this Court, Defendant partially accepted Plaintiff's Claim. (See pg. 2, para. 3 of [DE 26]). As such, the ruling in *Garcia* is more applicable to the case at hand. Finally and pursuant to the ruling in *Garcia, Heery Int'l* and *Byrd*, Defendant cannot seek to exclude Mr. Borte's testimony in summary judgment proceedings. Indeed, any issues of credibility of Mr. Bortes or the weight of his testimony/evidence are not appropriate in a summary judgment determination. *Id.*; *See, Heery Int'l*, 646 So.2d at 822; *See also, Byrd*, 948 So.2d at 923. *See also*, *Gov't Employees Ins. Co. v. DG Esthetic & Therapy Ctr., Inc.*, 18-20921-CIV, 2019 WL 1992930, at *7 (S.D. Fla. Apr. 19, 2019).

      6.  <u>Plaintiff Fara Hernandez</u>

In her affidavit in support of this Response, Fara Hernandez testified that the water damage to the interior of her home was caused as a result of Hurricane Irma. (A copy of Mrs. Hernandez's affidavit is attached hereto as **Exhibit "G"**). Specifically, Mrs. Hernandez confirmed that, "[T]he existing interior and exterior damage to the Subject Property did not exist prior to Hurricane Irma and was readily apparent immediately after Hurricane Irma." (See para. 7 of Exhibit "G"). Mrs. Hernandez went on to testify that, according to her sworn proof of loss, the damage to her property was $129,833.89 after the applicable $4,580.00 deductible. (See Exhibits 9-10 of Exhibit "G").

Therefore, Mrs. Fernandez's testimony creates an issue of fact as to the amount of the damage to her property, as well as, the cause of the water damage to the interior of her home. Specifically, that said water damage was not pre-existing, but that it was a result of water that seeped through an opening/crack created by Hurricane Irma winds. Therefore, summary judgment on this issue is improper. As such, summary judgment on this issue is improper.

    **III.**    <u>**ASSUMING, ARGUENDO, THAT DEFENDANT'S ARGUMENTS ARE CREDIBLE, THIS COURT CAN ONLY GRANT A PARTIAL SUMMARY JUDGMENT AS TO THE "PERIL CREATED OPENING" ARGUMENT**</u>

In its Motion for Summary Judgment [DE 26], Defendant admitted that part of Plaintiff's claim was covered (See pg. 3, para. 3 of [DE 26]). Specifically, Defendant states that,

> "Geovera determined that the amount of Plaintiff's <u>covered</u> loss was $3,095.82. The <u>covered items consisted of damaged patio paneling, a damaged wrought iron fence and 3 broken roof tiles</u>. As the <u>covered damages</u> were below Plaintiff's $4,580.00 deductible, no payment made to Plaintiff by GeoVera, as set forth in Geovera's letter to Plaintiff dated November 14, 2017.

(See pg. 3, para. 3 of [DE 26]). (See also, composite Exhibit "D" to [DE 26]).

In light of the forgoing, there is no issue of fact that Defendant accepted coverage of part of Plaintiff's claim which included, in part, three (3) tiles of Plaintiff's roof.

Indeed, the only dispute before this Court is whether the interior water damage to Plaintiff's property triggered application of the "water damage" Policy Exclusion. (See Section II, B, above).

Assuming that Defendant can meet its burden, which <u>Plaintiff claims it has not</u>, the only ruling this Honorable Court can enter is a partial summary judgment as to the non-covered items (i.e. the water damage to the interior of Plaintiff's home).

In the case before the Court and as outlined in more detail in Section II B above, there are genuine issues of fact as to whether the Policy Exception applies. Specifically and based on the deposition testimony of Mr. Smith (Exhibit "D"), Mr. Bortes (Exhibit "E"), as well as, the Affidavits of Mr. Barba (Exhibit "C") and Plaintiff (Exhibit "G"), there are genuine issues of material facts as to whether the water damage to the interior of Plaintiff's Residence was caused by water that seeped in through openings caused by Hurricane Irma winds.

## **CONCLUSION**

In summation, Defendant's Motion for Summary should be denied based on the various issues of fact outlined above. First, Defendant has not met its burden of conclusively demonstrating that no genuine issues of material fact exists as to whether the loss to Plaintiff's resident is covered pursuant to the insurance property. *Catrett*, 477 U.S. at 323 (1986). Second and based on the evidence at issue, the record contains genuine issues of material facts related to whether Defendant breached the Insurance contract at Issue by not accepting coverage of the damage to the roof. (See Exhibits "A" – "E"). In addition, and based on the deposition testimony of Mr. Smith (Exhibit "D"), Mr. Bortes (Exhibit "E"), as well as, the Affidavits of Mr. Barba (Exhibit "C"), Mr. Baboolal (Exhibit "H") and Plaintiff (Exhibit "G"), there are genuine issues of material facts as to the damage amount to Plaintiff's property and as to whether the water damage to the interior of Plaintiff's Residence was caused by water that seeped in through openings caused by Hurricane Irma winds.

As such this Court should rule in favor of the Plaintiff and deny Defendant's Motion [DE 26].

Dated: June 18, 2019

        **AZOY SOCORRO, LLP**
        Attorneys for the Plaintiff
        2020 Ponce de Leon Blvd.
        Suite 1008
        Gables, FL 33134
        Telephone: (305) 340-7542
        Facsimile: (305) 418-7438
        Email: jose@azoysocorro.com

        By: */s/ José A. Socorro*
        JOSÉ A. SOCORRO
        Florida Bar No.: 011675

## **CERTIFICATE OF SERVICE**

I hereby certify that on **June 18, 2019**, I electronically filed the foregoing document with the clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day to: Karen A. Brimmer, Esq. (kbrimmer@hinshawlaw.com and acaceres-naar@hinshawlaw.com), Hinshaw & Culbertson LLP, 2525 Ponce de Leon Boulevard, 4th Floor, Coral Gables, Florida 33134, in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

        AZOY SOCORRO, LLP

        /s/ José A. Socorro
        JOSÉ A. SOCORRO, ESQUIRE
        Florida Bar No.: 011675
        2020 Ponce de Leon
        Blvd., Suite 1008 Coral
        Gables, Florida 33134
        Telephone:   (305) 340-7542
        Facsimile:   (305) 418-7438
        *Attorneys for Plaintiff*